Tri M. PHAM, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–09–00484–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 14, 2010.

Norman J. Silverman, Houston, for appellant.

Donald W. Rogers, Jr., Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices YATES and SULLIVAN.

## OPINION

ADELE HEDGES, Chief Justice.

Appellant, Tri M. Pham, appeals from his felony conviction for delivery of a con-

trolled substance, namely methamphetamine. In three related issues, appellant contends that the trial court violated his constitutional and statutory rights under the federal and state constitutions and article 38.23 of the Texas Code of Criminal Procedure by admitting evidence seized from a co-defendant's vehicle. We affirm the trial court's judgment.

## I. BACKGROUND

On the afternoon of June 7, 2008, a number of officers from the Houston Police Department were conducting undercover surveillance in an area of southwest Houston where officers had previously made numerous narcotics arrests. Officer Larry Vaughn observed Nguyen Thai Ho park his vehicle in a parking lot in the area under surveillance. Appellant arrived in the same parking lot and parked his vehicle close to Ho's. Ho then exited his vehicle (empty handed), entered appellant's vehicle, and closed the car door. Officer Vaughn observed the two men talking to one another; the men's attention seemed to be concentrated on the center console area inside the vehicle. Minutes later, Ho exited the vehicle, now carrying a "big plastic shopping bag." Officer Vaughn believed that the bag's contents were heavy because the plastic was quite "stretched." The bag was white and opaque, and newspaper was protruding from the top, concealing the bag's contents. Holding the shopping bag, Ho returned to his vehicle and drove away. Appellant also left the parking lot in his vehicle, driving in a separate direction.

Believing that a narcotics transaction had occurred between appellant and Ho, Officer Vaughn radioed surrounding undercover officers to assist in monitoring both vehicles. Officer Vaughn followed appellant's vehicle in an unmarked unit; Sergeant Kerry Richards followed Ho's vehicle. While following appellant, Officer Vaughn observed appellant commit three changing-lanes-without-signaling violations, all arrestable traffic offenses. Officer Vaughn instructed Officer Kenneth Cockrill, a uniformed officer in a nearby marked vehicle, to stop appellant for the traffic violations Officer Vaughn had observed. Officer Cockrill stopped and arrested appellant for the traffic violations and seized appellant's vehicle. A subsequent search of appellant's vehicle revealed $1,730 in cash.

While following Ho, Sergeant Richards observed Ho commit two traffic violations: failure to maintain a single lane of traffic and changing lanes without signaling. Sergeant Richards then instructed Officers Lombardo and Sanchez, uniformed officers in a nearby marked unit, to stop Ho for the traffic violations, also arrestable offenses. Officers Lombardo and Sanchez stopped Ho, and as Officer Lombardo approached the vehicle, he observed Ho throw the white shopping bag to the backseat of the vehicle. The officers ultimately detained Ho and seized and searched the shopping bag, which contained approximately 2,946 methamphetamine pills, more commonly known as Ecstasy. Ho was arrested and charged with possession of the methamphetamine discovered in the shopping bag. Appellant was subsequently charged with delivery of the methamphetamine.

Appellant pleaded not guilty to the delivery charge. Ho, however, pleaded guilty to the possession charge and testified against appellant at his trial. According to Ho, he had first experimented with Ecstasy at appellant's encouragement just two months prior to the June 2008 arrests. Ho began abusing the narcotic and regularly purchased pills from appellant. Over a two-month period, Ho accrued a $450 debt and was unable to pay appellant. Ap-

pellant then offered to forgive the debt in return for a favor: Ho needed to deliver a bag to a third party. Appellant instructed Ho to meet him in the southwest Houston parking lot. When Ho met appellant in the parking lot, he entered appellant's vehicle, and appellant gave Ho the white shopping bag with delivery instructions. Appellant told Ho to deliver the bag to a man named Johnny, described as an Asian male with long hair in a white tank top. Appellant instructed Ho to deliver the bag to Johnny at a particular food market in southwest Houston. Appellant also instructed Ho to call him once the delivery had been completed. Ho then returned to his vehicle with the bag and proceeded to his meeting with Johnny. But Ho was stopped by police for the aforementioned traffic violations on his way to deliver the bag. Fearful that the bag contained narcotics, Ho threw the bag to the back of his vehicle when he was stopped by officers. The officers later seized the bag and its contents and arrested Ho.

After Ho's testimony, appellant sought to suppress the fruits of his arrest and evidence obtained from the search of Ho's vehicle. With respect to appellant's arrest, he contended that the arrest was unlawful under chapter 14 of the Code of Criminal Procedure; thus, the fruits of the arrest—$1,730 in cash—should have been suppressed. As to Ho's traffic stop, appellant argued that the search of Ho's vehicle was illegal and, therefore, the results of the search—the bag and its contents—should have been suppressed. In response, the State argued that appellant's arrest was lawful and disputed appellant's standing to challenge the search of the shopping bag. Specifically, the State claimed that appellant had abandoned the bag by giving it to Ho and instructing Ho to give the bag to a third party. According to the State, because appellant relinquished possession of the bag to Ho and

never intended to repossess it, appellant abandoned any privacy interest in the bag. The trial court rejected the State's standing argument, ruling as follows:

[T]he Court finds that the defendant . . . had constructive possession of the white plastic . . . shopping bag and the contents therein since he had made an actual delivery of same to . . . Ho for an intended subsequent downstream delivery of the contraband. Accordingly, the Court concludes that [appellant] has standing to contest the stop of Mr. Ho's vehicle and the resulting search and seizure of the white grocery, or shopping bag, containing the contraband.

However, the Court holds and finds that . . . Ho was stopped and arrested for . . . [a] traffic offense . . . which . . . was committed in the presence and view of [an officer].

. . .

[T]he Court holds that the traffic stop and arrest of Mr. Ho were lawful; and, likewise, the resulting search of the white grocery . . . bag and its contents were lawful. Defendant's Motion to Suppress is therefore denied.

After the trial court's ruling, appellant took the stand in the presence of the jury. He testified that he had loaned $1,500 to Ho, and Ho planned to repay the personal loan to appellant on the day of their arrests. According to appellant, Ho asked appellant to meet him in the southwest Houston parking lot. When the men arrived, Ho entered appellant's vehicle, retrieved a bag from under his shirt, and pulled money from the shopping bag. Appellant took the money, and Ho exited the vehicle. Appellant denied giving Ecstasy pills to Ho and denied possessory or ownership interests in the shopping bag. The jury ultimately found appellant guilty of delivery of a controlled substance, sen-

tenced him to 10 years in prison, and assessed a $50,000 fine, both of which were fully probated.

On appeal, appellant argues in three related issues that the trial court erred by denying his motion to suppress the contents of the shopping bag. In response, the State maintains its challenge to appellant's standing. The State also argues that as a matter of public policy appellant should be estopped from arguing he has standing because he subsequently testified at trial that he had no possessory or ownership interest in the shopping bag. Additionally, the State argues that the search of Ho's vehicle was legal under the plain view and automobile exceptions to the warrant requirement.

## II. STANDARD OF REVIEW

We generally review a trial court's ruling on a motion to suppress for an abuse of discretion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App.2002). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim.App.2007); *Estrada v. State*, 154 S.W.3d 604, 607 (Tex.Crim.App.2005).

Furthermore, in a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and of the weight to be given to their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App.2000). The trial court may accept or reject all or any part of a witness's testimony. *Id.* When the trial court makes no express findings of fact, as in this case, we review the evidence in the light most favorable to the trial court's ruling and assume that the trial court

made implicit findings of fact that support the ruling as long as those findings are supported by the record. *Id.*

In determining whether a trial court's decision is supported by the record, we generally consider only the evidence before the trial court at the time of the ruling because the ruling was based on it rather than evidence introduced later. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex.Crim.App.2007). But this general rule is inapplicable when the parties subsequently relitigate the suppression issue consensually. *Id.* Thus, if the suppression issue is relitigated either without objection or with subsequent participation in the inquiry by the defense, the defendant is deemed to have elected to re-open the evidence, and we may consider the relevant trial testimony in our review. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex.Crim. App.1996); *Garcia v. State*, 112 S.W.3d 839, 847–48 (Tex.App.-Houston [14th Dist.] 2003, no pet.). Here, the parties do not dispute that the suppression issue was not relitigated at trial after the ruling on the suppression issue. Therefore, we will consider only the evidence admitted prior to and at the time the trial court made its ruling.

## III. STANDING TO ASSERT SEARCH AND SEIZURE PROTECTION

Appellant challenges the search of the shopping bag under the United States and Texas Constitutions and article 38.23 of the Code of Criminal Procedure. And the State challenges appellant's authority to make constitutional and statutory claims under these provisions. The court below found that appellant had standing to assert the claims, but ultimately concluded that the search and seizure were lawful. Although the trial court found that appellant had standing but denied the motion on

another basis, as the reviewing court, we may sustain the trial court's ruling on the motion to suppress on the ground that the evidence failed to establish standing as a matter of law. *See Wilson v. State*, 692 S.W.2d 661, 671 (Tex.Crim.App.1984); *Sutton v. State*, 711 S.W.2d 136, 137–38 (Tex. App.-Houston [14th Dist.] 1986, no pet.). Because the State challenged appellant's standing below and on appeal and because standing is an element of appellant's Fourth Amendment claim, we first consider whether appellant had standing to challenge law enforcement's search and seizure of the bag.

█ The state and federal constitutions protect individuals against official intrusion into places where and things in which individuals have a reasonable expectation of privacy. *See* U.S. Const. amend. IV; Tex. Const. art. I, § 9. Moreover, article 38.23 provides: "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." Tex.Code Crim. Proc. Ann. art. 38.23 (Vernon 2005). To assert a challenge to a search and seizure under the United States and Texas Constitutions and article 38.23, a party must first establish standing.[1] *See Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996).

█ Standing in this context is an individual's right to complain about an allegedly illegal government intrusion under the Fourth Amendment and article I, section 9. *Id.* Fourth amendment rights are personal rights which may not be vicariously asserted. *Rakas v. Illinois*, 439 U.S. 128, 133–34, 99 S.Ct. 421, 58 L.Ed.2d 387 (1979) (citing *Brown v. United States*, 411 U.S. 223, 230, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973)); *see also Kothe v. State*, 152 S.W.3d 54, 59 (Tex.Crim.App.2004). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134, 99 S.Ct. 421. "And since the exclusionary rule is an attempt to effectuate the guarantes of the Fourth Amendment, it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections" *Id.* (citations omitted). Standing is a question of law which we review *de novo. Kothe*, 152 S.W.3d at 59; *Turner v. State*, 132 S.W.3d 504, 507 (Tex. App.-Houston [1st Dist.] 2004, pet. ref'd).

█ Furthermore, a defendant bringing a motion to suppress bears the burden of establishing all of the elements of his Fourth Amendment and article I, section 9 claims. *See State v. Mercado*, 972 S.W.2d 75, 78 (Tex.Crim.App.1998) (per curiam). Part of that proof includes the element that he had a reasonable expectation of privacy from law enforcement intrusion. *See id.; see also Wilson*, 692 S.W.2d at 663–64; *Trinh v. State*, 974 S.W.2d 872, 874 (Tex.App.-Houston [14th Dist.] 1998, no pet.) (quoting *Metoyer v. State*, 860 S.W.2d 673, 677 (Tex.App.-Fort Worth 1993, pet. ref'd)); *Kelley v. State*, 807 S.W.2d 810, 815 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd). To determine whether appellant had a legitimate expectation of privacy, we must first determine whether appellant demonstrated an actual

1. In *Rakas v. Illinois*, the United States Supreme Court stated that the issue is more properly considered one of substantive Fourth Amendment law rather than "standing"; still, courts continue to discuss this area of law, conceptually, as a standing issue. 439 U.S. 128, 133, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

subjective expectation of privacy. *See Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979); *Villarreal*, 935 S.W.2d at 138; *see also Dominguez v. State*, 125 S.W.3d 755, 762 (Tex. App.-Houston [1st Dist.] 2003. pet. ref'd). If he did, we must next determine if that subjective expectation is one that society is prepared to recognize as reasonable. *Smith*, 442 U.S. at 740, 99 S.Ct. 2577; *Villarreal*, 935 S.W.2d at 138.

 Moreover, we consider the following factors in determining whether a given claim is reasonable: (1) whether the accused had a property or possessory interest in the thing seized or the place searched; (2) whether the accused was legitimately in the place invaded; (3) whether the accused had complete dominion or control and the right to exclude others; (4) whether, before the intrusion, the accused took normal precautions customarily taken by those seeking privacy; (5) whether the accused exhibited a subjective expectation of privacy that the item would remain free from governmental intrusion; and (6) whether the accused's claim of privacy is consistent with historical notions of privacy. *See United States v. Cardoza–Hinojosa*, 140 F.3d 610, 615 (5th Cir.1998) (quoting *United States v. Ibarra*, 948 F.2d 903, 906 (5th Cir.1991)); *Villarreal*, 935 S.W.2d at 138. This list of factors is not exhaustive, and none is dispositive of a particular assertion of privacy; rather, we examine the totality of the surrounding circumstances. Only after a defendant has established standing to complain may a court consider whether he suffered a substantive Fourth Amendment or article I, section 9 violation. *Kothe*, 152 S.W.3d at 59.

### A. Reasonable Expectation of Privacy: Subjective Element

 There is some evidence in the record that appellant had a subjective expec-tation of privacy in the shopping bag. His placing the contents in an opaque bag and stuffing newspaper in the top to conceal its contents evidences his subjective expectation of privacy in those materials. *See United States v. Villarreal*, 963 F.2d 770, 773 (5th Cir.1992) ("Individuals can manifest legitimate expectations of privacy by placing items in closed, opaque containers that conceal their contents from plain view."). Appellant also gave the bag to Ho, a friend and confidant whom appellant believed would deliver the bag according to his specific instructions. Accordingly, appellant appears to have manifested his subjective expectation of privacy in the shopping bag in question. Still, the United States and Texas Constitutions do not protect merely subjective expectations of privacy but only those expectations that society is prepared to recognize as reasonable. *Smith*, 442 U.S. at 740, 99 S.Ct. 2577; *Villarreal*, 935 S.W.2d at 138.

### B. Reasonable Expectation of Privacy: Objective Element

The evidence does not support a conclusion that appellant's subjective expectation of privacy is one that society would recognize as reasonable. Appellant was not in the place searched, which was Ho's vehicle. *See Cardoza–Hinojosa*, 140 F.3d at 615; *see also Villarreal*, 935 S.W.2d at 138. And although appellant had a possessory and ownership interest in the shopping bag at one time prior to the search of Ho's vehicle, those interests in the bag and its contents were compromised when appellant gave the bag to Ho. By giving the bag to Ho, appellant assumed the risk that his confidant would reveal that information to the public, thus frustrating appellant's expectation of privacy. Additionally, appellant no longer had dominion or control over the bag or its contents. He had

relinquished the right to exclude others from the bag and its contents. Having assumed the risk that Ho would betray the secrecy concerning the bag's contents, appellant relinquished his expectation of privacy.[2] More importantly, the evidence unequivocally reflects that appellant had no intention of repossessing the bag: by giving the bag to Ho, who in turn would give it to a third party, appellant permanently disavowed possession and ownership of the bag.[3] An individual cannot reasonably expect to maintain privacy in a shopping bag when he has surrendered all of the normal incidents of ownership, including possession and the right to exclude others, to another and has no intent to regain possession or ownership of the item. *Cf. California v. Greenwood*, 486 U.S. 35, 40, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988) ("[R]espondents placed their refuse at the curb for the express purposes of conveying it to a third party, the trash collector, who might himself have sorted through respondents' trash or permitted others, such as the police, to do so."). Moreover, when a person displays contraband to another person for the purpose of initiating a sale of the contraband, he holds the contraband for public display, and a claim of an expectation of privacy can no longer be made. *Cf. Vela v. State*, 775 S.W.2d 11, 12 (Tex. App.-Houston [1st Dist.] 1989, pet. ref'd). Here, the evidence establishes that appellant was distributing a controlled substance to a third party via Ho.

█ Under these specific facts, we conclude that appellant's subjective expectation of privacy is not one that society would recognize as reasonable.[4] *See Villarreal*, 935 S.W.2d at 139. Appellant has failed to establish any state or federal constitution privacy interest and thus has no standing to object to the search and seizure of the evidence under the United

2. Appellant contends that this case is similar to "carrier" cases, where courts have concluded that individuals "do not surrender their expectations of privacy in closed containers when they send them by mail or common carrier." *See Villarreal*, 963 F.2d at 773–74. We are not persuaded by appellant's argument. The relationship between a private carrier and its customer—a formal relationship based upon monetary consideration—is substantially different from the relationship between friends. A customer who retains services from a private carrier generally expects no one except the intended recipient to open the shipment. On the other hand, there is reason to assume that an acquaintance, delivering an item upon request, would open it, especially one similar to the bag in this case, before it arrives at its destination. Presumably, there is a greater risk that an acquaintance or colleague delivering an item, such as the one in this case, would look at the items or expose the item to the public than a commercial carrier whose services have been retained by a paying customer. Accordingly, we reject appellant's argument.

3. We also reject the State's argument that appellant abandoned the property by giving the bag to Ho. The line of abandonment cases cited by the State is distinguishable from the operative facts of this case: the accused in the cited cases generally disclaimed ownership before the search. There is no evidence in the instant case (that we may consider on review) reflecting that appellant disclaimed ownership in the bag prior to or during the search. Thus, the abandonment line of cases is not on point.

4. We also note that an argument similar to appellant's has been rejected by the United States Supreme Court and the Fifth Circuit. *See United States v. Padilla*, 508 U.S. 77, 78, 113 S.Ct. 1936, 123 L.Ed.2d 635 (1993) (per curiam) (rejecting proposition that a co-defendant obtains "a legitimate expectation of privacy for Fourth Amendment purposes if he has either a supervisory role in the [drug] conspiracy or joint control over the ... property involved in the search or seizure"); *United States v. DeLeon*, 641 F.2d 330, 337 (5th Cir.1981) (concluding that a co-defendant "may not assert an expectation of privacy in the security of a bag in the possession of his agents" or co-defendants).

States and Texas Constitutions. Furthermore, article 38.23(a) does not confer third-party standing to persons accused of crimes, such that they may complain about the receipt of evidence that was obtained by violation of the rights of others, no matter how remote an interest from themselves.[5] *See Miles v. State,* 241 S.W.3d 28, 47 (Tex.Crim.App.2007). Accordingly, we overrule appellant's first, second, and third issues and affirm the trial court's judgment.

---

5. We note that even presuming that appellant had established standing to raise a Fourth Amendment, article 1, section 9, or article 38.23 claim, the record sufficiently supports the trial court's finding that the stop and search were predicated on probable cause in light of the totality of the circumstances surrounding the warrantless search.