**Affirmed and Memorandum Opinion filed August 30, 2016.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-15-00225-CR

**RAYMOND LOUIS EISENBACH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 338th District Court
Harris County, Texas
Trial Court Cause No. 1416691**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant, Raymond Louis Eisenbach, of possession of a controlled substance. The conviction was enhanced with a prior conviction and the jury sentenced appellant to twelve years in prison. In his sole point of error, appellant contends the trial court abused its discretion in denying his motion to suppress. We affirm.

# I.    STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the trial court's ruling. *State v. Garcia–Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). When the trial court does not make explicit findings of fact, as in this case, we infer the necessary factual findings that support the trial court's ruling if the record evidence supports these implied fact findings. *Id.* The trial court's ruling is reviewed pursuant to a bifurcated standard under which "[t]he trial judge's determinations of historical facts and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record. But when mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, we review the trial judge's ruling de novo." *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013), citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). In our review of the trial court's ruling on the motion to suppress, we will consider only the record of the suppression hearing because that is the only evidence before the trial court at the time of its ruling. *See Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007).[1]

# II.    THE EVIDENCE

Sergeant Leon Hernandez and Deputy Robert Buentello of the Harris County Sheriff's Office were working an approved extra job at an apartment complex in a high-crime area of Houston, Texas. Their duties were to provide security and look for trespassers and car burglars. Around midnight on February 5, 2015, both officers were

---

[1] The record reflects the suppression issue was not relitigated during trial. Therefore, the trial court's pretrial denial of appellant's motion to suppress is the operative ruling in this case, and we will limit our review to the evidence presented during the pretrial suppression hearing. *Id.* at 687 (in reviewing trial court's pretrial ruling on suppression motion, appellate court is limited to record produced at suppression hearing unless parties relitigate issue at trial). *See also Pham v. State*, 324 S.W.3d 869, 873 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (concluding that we only consider the evidence before the trial court at the time of the ruling on the suppression issue unless it was subsequently relitigated).

conducting a foot patrol of the apartment complex when they noticed a truck with the engine turned off and backed into a parking space; there were two occupants inside the truck. Hernandez had worked at the complex for the past five years and did not recognize either occupant and was unaware whether they were residents. Hernandez approached the vehicle on the passenger side, where the window was open, and asked the passenger if he lived on the premises. He said no and Hernandez asked for his name. The passenger gave his name, Louis, and Hernandez asked Louis if he could step out of the vehicle. Louis agreed and exited the vehicle. Hernandez then asked Louis if he had any narcotics on his person or inside the vehicle and Louis said he had a crack pipe. Hernandez asked Louis if he could retrieve it for him and he agreed. Louis reached in towards the middle console of the vehicle and produced a pipe.

Meanwhile, Buentello was in front of the vehicle by the headlight. Buentello was watching the driver for officer safety while Hernandez spoke to the passenger. Buentello had worked at that complex for approximately three years and did not recognize either occupant of the vehicle as a resident. After Louis handed Hernandez the crack pipe, Hernandez motioned to Buentello, who went around the vehicle to the window on the driver's side. Buentello had the driver step out of his vehicle. As the driver opened his door, Buentello observed a syringe on the door handle with a cloudy-white liquid inside. When Buentello asked what it was, the driver, identified by Buentello as appellant, said, "meth." Buentello then detained appellant. Buentello testified that he asked appellant to step out of the vehicle after the crack pipe was given to Hernandez in order to ascertain whether any controlled substances were in the vehicle.

3

On cross-examination, Buentello admitted that had appellant driven forward, the vehicle would have possibly hit him, "if [he] stayed there." Although Buentello agreed he was standing in front of the vehicle, he denied that he "blocked" appellant from leaving.

After appellant was detained, Buentello searched him and found a shaving bag in the coat appellant was wearing containing unused syringes, a rubber tourniquet, and several baggies that were later identified as containing methamphetamine. Appellant was subsequently arrested by Deputy Shawn Shandera, an on-duty officer called to the scene by Hernandez and Buentello.

Appellant filed a motion to suppress. Following a hearing, the trial court denied the motion.

### III.  APPLICABLE LAW

There are three distinct types of police-citizen interactions: (1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and duration that must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures, that are reasonable only if supported by probable cause. *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013). Consensual encounters are not Fourth Amendment seizures. *Id*. "Police officers are as free as any other citizen to approach citizens to ask for information or cooperation." *Id*.

An "encounter" is distinct from an investigatory detention. *Munera v. State*, 965 S.W.2d 523, 527 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd). A seizure occurs when a person has been subjected to either the application of physical force or the person submits to the assertion of authority. *Id.* "During an encounter, an officer is free to approach the individual and ask questions, but the individual is free to ignore the

officer and walk away." *Id.* The confrontation remains an encounter unless a reasonable person would not feel free to leave and has yielded to the officer's show of authority or been physically forced to yield. *Id*. In deciding whether a seizure has occurred, we examine the totality of the circumstances surrounding the encounter. *Id.*

## IV.   ANALYSIS

Appellant's sole issue claims the trial court erred in denying his motion to suppress because the police did not have reasonable suspicion to detain him. Appellant argues a seizure, leading to the discovery of drugs in appellant's possession, occurred when Hernandez approached the passenger of the vehicle and Buentello positioned himself in front of the headlight on the driver's side. Appellant contends Buentello's position prevented his departure, effectively terminating any consensual encounter. The resultant investigatory detention, appellant asserts, lacked the requisite reasonable suspicion.

The Court of Criminal Appeals has emphasized there is no bright-line rule to determine when an encounter becomes a detention. *See Garcia–Cantu*, 253 S.W.3d at 243. Generally, the encounter is no longer consensual when an officer, through force or a showing of authority, restrains a citizen's liberty. *State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011). We must take into account the totality of the circumstances surrounding the interaction to determine whether a reasonable person would have felt free to ignore the police officer's request or terminate the encounter. *State v. Castleberry*, 332 S.W.3d 460, 467 (Tex. Crim. App. 2011). Among the factors that may indicate a seizure would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Crain v. State*, 315 S.W.3d 43, 49–50 (Tex. Crim. App. 2010). Whether an encounter between officers and a person in a vehicle constitutes a seizure depends on

5

facts specific to the manner of the encounter and the degree of authority displayed, as well as all other circumstances surrounding the incident. *Garcia–Cantu*, 253 S.W.3d at 244.

In *Johnson v. State*, 414 S.W.3d 184, 193 (Tex. Crim. App. 2013), the officer partially blocked the appellant's car with his police car, shined a high-beam spotlight at the occupants of the car, and yelled in a loud authoritative voice, "what's going on." In *Garcia-Cantu*, 253 S.W.3d at 240, the officer blocked the appellant's car with his police car on a dead-end street and shined his spotlight in the appellant's car. In both cases, the Texas Court of Criminal Appeals found the officer's actions, combined with the circumstances of the encounter, constituted a detention. *See Johnson*, 414 S.W.3d at 193; *Garcia-Cantu*, 253 S.W.3d at 248.

Here we have no such show of authority. Both officers approached the vehicle to determine if the occupants lived on the premises. Neither Hernandez nor Buentello used a spotlight, there was no testimony that either spoke in a loud or commanding tone, and appellant's vehicle was not blocked in by a police car. Buentello testified that to ensure officer safety he positioned himself at the front of the vehicle in order to view the driver while Hernandez spoke to the passenger. There was no evidence to the contrary. Appellant cites no authority, and we are aware of none, that an officer detains all occupants merely by positioning himself at the front of the vehicle.

The record reflects it was only after Louis admitted to possessing a crack pipe that Buentello approached appellant and asked him to exit the vehicle. Even though the officers did not communicate to appellant or the passenger that their request for information might be ignored, the passenger's response to the officer's question, stating that he had a crack pipe, did not cause the encounter to lose its consensual nature. *See Woodard*, 341 S.W.3d at 411.

From the record, the trial court could find Buentello was standing in front of

6

appellant's vehicle for officer safety, and not to detain appellant. Given the time of night and the high crime area of the apartment complex, it is reasonable to view Buentello's actions as necessary for officer safety. *See King v. State,* 14-11-00153-CR, 2012 WL 376688, at *3 (Tex. App.—Houston [14th Dist.] Feb. 7, 2012, no pet.) (mem. op.) (not designated for publication) (holding that even aiming a spotlight with one hand and holding on to the pistol grip of sidearm with other hand in the middle of the night and in a high crime area was appropriate for officer safety and did not constitute a detention). As such, we conclude the officer's initial approach was a consensual encounter and not a detention. The encounter morphed into a detention following a reasonable suspicion of drug activity when the passenger stated that there was drug paraphernalia in the vehicle. *See State v. Woodard,* 314 S.W.3d 86, 97 (Tex. App.—Fort Worth 2010), *aff'd,* 341 S.W.3d 404 (Tex. Crim. App. 2011) (holding officer's initial approach and questioning of defendant was a consensual encounter that transitioned to a warrantless detention and arrest only after reasonable suspicion became apparent to the officer).

Because the trial court did not abuse its discretion in denying appellant's motion to suppress, we overrule appellant's sole point of error. Accordingly, we affirm the trial court's judgment.


/s/     John Donovan
        Justice


Panel consists of Justices Jamison, Donovan and Brown.
Do Not Publish — Tex. R. App. P. 47.2(b).